IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| EUSEBIO NAVAREZ, | ) | |
| | ) | Case No. CV-08-373-E-BLW |
| Petitioner, | ) | |
| | ) | **MEMORANDUM DECISION** |
| v. | ) | **AND ORDER** |
| | ) | |
| LAWRENCE G. WASDEN, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Pending before the Court in this habeas corpus action is Respondent's Motion for
Summary Judgment, filed February 10, 2009.  (Docket No. 7.)  Petitioner has been
provided with a copy of the Notice to Pro Se Litigants of the Summary Judgment Rule
Requirements.  (Docket No. 9.)  Petitioner's deadline for filing a response has passed.
Having reviewed the record in this case, including the state court record, the Court enters
the following Order granting the Motion for Summary Judgment and dismissing
Petitioner's Petition.

## BACKGROUND

Petitioner pled guilty to and was convicted of two counts of conspiracy to traffic
methamphetamine in the Seventh Judicial District Court in Fremont County, Idaho.
Judgment was entered on July 31, 2003. (State's Lodging A-1, pp. 221-22.)  He was
sentenced to concurrent terms of 10 years fixed with 15 years indeterminate.  He filed a
direct appeal, which concluded on February 11, 2005.  (State's Lodging B-6 & B-7.)  He

MEMORANDUM DECISION AND ORDER  1

filed a post-conviction relief petition almost one year later, on February 8, 2006.  (State's Lodging C-1, p. 1.)  After dismissal in the state district court, Petitioner filed an appeal.  The Idaho Court of Appeals affirmed the order of dismissal.  (State's Lodging D-4.)  The appeal concluded on July 10, 2008, after the Idaho Supreme Court denied the petition for review and the Idaho Court of Appeals issued the remittitur.  (State's Lodging D-7 & D-8.)

**MOTION FOR SUMMARY JUDGMENT**

### A.     Introduction

Petitioner brings five claims in his Petition.  His first claim is that his Fifth, Sixth, and Fourteenth Amendment rights were violated because the court proceedings were not adequately translated into Spanish due to problems with the sworn court interpreter, causing Petitioner to enter into a guilty plea that was not knowing or voluntary.   His second claim is that his Fifth, Sixth, and Fourteenth Amendment rights were violated because the prosecutor breached the plea agreement by not adhering to its earliest offer of (1)  recommending an indeterminate life sentence with ten years fixed, and (2) dismissing charges against Petitioner's wife.

His third claim is that his trial counsel misrepresented the terms and effects of the plea agreement, resulting in a guilty plea that was not knowing or voluntary.  His fourth claim is that trial counsel had a conflict of interest after the plea was entered and before sentencing when Petitioner tried to withdraw his plea, because counsel's ineffectiveness caused Petitioner to enter into the plea.  Petitioner's fifth claim is that trial counsel failed

MEMORANDUM DECISION AND ORDER  2

to raise and preserve for appeal the issue of the alleged inadequacy of the court interpreter.

### B.      Standard of Law

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The Federal Rules of Civil Procedure apply to habeas corpus actions except where application of the rules would be inconsistent with established habeas practice and procedure.  Rule 11, Rules Governing Section 2254 Cases.  Accordingly, summary judgment motions are appropriate in habeas corpus proceedings where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  *Blackledge v. Allison*, 431 U.S. 63, 80-81 (1977).

### C.      Discussion

#### 1.      First Claim: *Teague* Threshold Issue

Petitioner's first claim is that his due process rights under the Fifth, Sixth, and Fourteenth Amendments were violated when he entered a guilty plea that was not knowing or voluntary because the proceedings were not adequately translated into Spanish by the interpreter.  Respondent argues that this claim is barred by *Teague v. Lane*, 489 U.S. 288 (1989).

MEMORANDUM DECISION AND ORDER  3

"The [*Teague*] nonretroactivity principle prevents a federal court from granting habeas corpus relief to a state prisoner based on a rule announced after his conviction and sentence became final." *Caspari v. Bohlen*, 510 U.S. 383, 389 (1994). Under *Teague*, a new rule of criminal procedure may not be applied or announced in a habeas corpus case unless the rule falls within one of two narrow exceptions. *Penry v. Lynaugh*, 492 U.S. 302, 313 (1989), *abrogated on other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002).

When a *Teague* defense is raised, the Court is required to decide that issue before addressing the merits of the claim. *Horn v. Banks*, 536 U.S. 266 (2002). *Teague* applies only to new rules of criminal procedure. Decisions of "criminal procedure" are those decisions that implicate how the criminal trial process functions. Decisions of "substantive criminal law," by contrast, are those that reach beyond issues of procedural function and address the meaning, scope, and application of substantive criminal statutes. *Bousley v. U.S.*, 523 U.S. 614, 620 (1998). For *Teague* purposes, a new rule is one of "procedure" if it impacts the operation of the criminal trial process, and a new rule is one of "substance" if it alters the scope or modifies the applicability of a substantive criminal statute. *Bousley*, 523 U.S. at 620.

To determine whether a claim is barred by *Teague*'s non-retroactivity principles, a reviewing court engages in a three-step process. First, the court must ascertain the date on which the defendant's conviction and sentence became final. *Caspari v. Bohlen*, 510 U.S. at 390. Second, the court must survey "the legal landscape as it then existed" to determine whether existing precedent compelled a finding that the rule at issue "was

MEMORANDUM DECISION AND ORDER  4

required by the Constitution." *Lambrix v. Singletary*, 520 U.S. 518, 527 (1997). "Circuit court holdings suffice to create a 'clearly established' rule of law under *Teague*." *See Jackson v. Brown*, 513 F.3d 1057, 1073 n.8 (9th Cir. 2008) (quoting *Leavitt v. Arave*, 383 F.3d 809, 819 (9th Cir. 2004) and citing *Caspari v. Bohlen*, 510 U.S. at 395).

If the rule is considered "new" after the first and second steps, the court must proceed to the third step and determine whether either of the two announced exceptions applies. *Teague*, 489 U.S. at 307. The presumption against retroactivity is overcome only if the new rule prohibits "a certain category of punishment for a class of defendants because of their status or offense," *Penry v. Lynaugh*, 492 U.S. 302, 330 (1989), *abrogated on other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002), or presents a new "watershed rule of criminal procedure" that enhances accuracy and alters our understanding of bedrock procedural elements essential to the fairness of a particular conviction. *Teague*, 489 U.S. at 311.

Here, Respondent argues that no United States Supreme Court precedent exists to support Petitioner's claim that his plea should be deemed not knowing or voluntary and that his due process rights were violated because the proceedings were not adequately translated into Spanish by the interpreter. This is a procedural rule subject to a *Teague* analysis. It is clear that at the time of the state court decisions in Petitioner's case (and now) that there is no United States Supreme Court precedent directly addressing this issue.

MEMORANDUM DECISION AND ORDER  5

However, other precedent exists that can be applied to Plaintiff's claims that inadequate interpretation caused his plea to be unconstitutional.  A plea is "knowing" if a defendant understands the federal constitutional rights he is waiving by pleading guilty, and it is "voluntary" if he "possesses an understanding of the law in relation to the facts." *Boykin v. Alabama*, 395 U.S. 238, 243 n.5 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 466 (1938)).  An adequate  plea is one that "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."  *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).

While the Supreme Court has not specifically determined that there is constitutional right to an interpreter,[1] several lower federal courts have entertained such claims by  applying other general constitutional principles governing due process, fair trial procedures, and the right to communicate with counsel. In *U.S. ex rel. Negron v. State of New York*, 434 F.2d 386 (2d Cir. 1970), the circumstances challenged were as follows:

> Negron[,] a 23-year-old indigent with a sixth-grade Puerto Rican education, neither spoke nor understood any English. His court-appointed lawyer, Lloyd H. Baker, spoke no Spanish. Counsel and client thus could not communicate without the aid of a translator.  Nor was Negron able to participate in any manner in the conduct of his defense, except for the spotty instances when the proceedings were conducted in Spanish, or Negron's Spanish words were translated into English, or the English of his

---

[1]  *See United States v. Johnson*, 248 F.3d 655, 663 (7th Cir. 2001); *United States v. Desist*, 384 F.2d 889, 901 (2d Cir. 1967); *Pham v. Beaver*, 445 F.Supp. 2d 252, 256 (W.D.N.Y. 2006).

MEMORANDUM DECISION AND ORDER  6

lawyer, the trial judge, and the witnesses against him were gratuitously translated for Negron into Spanish.

      \*   \*   \*

To Negron, most of the trial must have been a babble of voices. Twelve of the state's fourteen witnesses testified against him in English. Apart from Mrs. Maggipinto's occasional ex post facto brief resumes–the detail and accuracy of which is not revealed in any record–none of this testimony was comprehensible to Negron.

*Id*. at 388-89.

The *Negron* Court relied on several United States Supreme Court cases to analyze Negron's claim and hold that "[t]he least we can require is that a court, put on notice of a defendant's severe language difficulty, make unmistakably clear to him that he has a right to have a competent translator assist him, at state expense if need be, throughout his trial." *Id*. at 390-91. For example, the Sixth Amendment right to be confronted with adverse witnesses includes the right to cross-examine those witnesses. *Pointer v. Texas*, 380 U.S. 400, 403 (1965). A state may not prosecute a person who is not present at his own trial unless he waives that right. *Illinois v. Allen*, 397 U.S. 337, 338 (1970) (waiver of right to be present occurs when defendant is so disorderly and disruptive that the trial cannot be carried on with him in the courtroom). Being present means that the defendant must possess "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." *Dusky v. United States*, 362 U.S. 402, 403 (1960) (mental competency context).

In a similar case challenging the lack of an interpreter at trial, *United States v. Cirrincione*, 780 F.2d 620 (7th Cir. 1985), the Court noted that "the very essence of due

MEMORANDUM DECISION AND ORDER  7

process is that a hearing take place "in a meaningful manner." *Id*. at 634 (relying on *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970)). Defendant Biagio Cirrincione's due process claim was rejected, and his case distinguished from *Negron*, on the following basis:

> In this case the trial court reviewed Biagio's claim and found, both by its observation of Biagio and through the hearing held to determine his ability to understand English, that Biagio both understands and speaks English. The record shows that during extensive direct and cross-examination Biagio rarely used the interpreter, which the district court allowed him to use even though the judge was convinced that Biagio did not need one.

*Id*. at 634.

The failure to be able to communicate in a meaningful manner with counsel has also been held to be an error of complete denial of counsel under *United States v. Cronic*, 466 U.S. 648 (1984). *See Gonzalez v. Phillips*, 195 F.Supp.2d 893 (E.D. Mich 2001). In *Gonzalez*, the Court granted habeas corpus relief under *Cronic*, reasoning:

> In the pending case, Gonzalez was deprived his right to communicate with his attorney. Where he and his attorney could not communicate in a shared language, the Court sees no way in which the two could have a meaningful attorney-client relationship during trial guaranteed by the Sixth Amendment. Thus, the *Cronic* presumption of prejudice applies.

*Id*. at 902.

Based on the United States Supreme Court precedent cited by the courts directly above and that existed at the time Petitioner's judgment became final, this Court concludes that Petitioner's claim is not barred by *Teague v. Lane* to the extent that his

MEMORANDUM DECISION AND ORDER  8

claims rely on constitutional principles already set forth by the United States Supreme

Court, as noted above.  Therefore, the Court now considers whether Petitioner has

presented adequate facts to warrant relief under 28 U.S.C. §  2254(d)(1) or (2).

2.    <u>Claim One: AEDPA Merits Analysis</u>

Petitioner's case was filed after April 24, 1996, making it subject to the

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  In order to obtain

federal habeas corpus relief from a state court judgment under AEDPA, the petitioner

must show that the state court's adjudication of the merits of his federal claim either:

> 1.  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> 2.  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

To prevail under § 2254(d)(1), a petitioner must show that the state court was

"wrong as a matter of law," in that it "applie[d] a legal rule that contradicts our prior

holdings" or that it "reache[d] a different result from one of our cases despite confronting

indistinguishable facts."  *Ramdass v. Angelone*, 530 U.S. 156, 165-66 (2000) (citing

*Williams v. Taylor*, 529 U.S. 362 (2000)).  Or, a petitioner can prevail by showing that the

state court was "[objectively] unreasonable in applying the governing legal principle to the

facts of the case," or "was unreasonable in refusing to extend the governing legal principle

to a context in which the principle should have controlled." *Id.*, 530 U.S. at 166.

MEMORANDUM DECISION AND ORDER  9

However, a petitioner cannot prevail under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411.

Under AEDPA, "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); 28 U.S.C. § 2254(e)(1).  A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; 28 U.S.C. § 2254(d)(2).

Plaintiff's first claim is that his Fifth, Sixth, and Fourteenth Amendment rights were violated because the court proceedings were not adequately translated into Spanish due to problems with the court interpreter, causing Petitioner to enter into a guilty plea that was not knowing or voluntary.  The record reflects the following facts.  In the present case, Petitioner's first language was Spanish.  At the time of trial, he had been living in the United States for over thirty years.  He acknowledged that he understood English in normal conversation.  A court interpreter was provided to petitioner throughout the change of plea hearing.  Reviewing this claim on appeal of the dismissal of Petitioner's post-conviction petition, the Idaho Court of Appeals found: "The district court's questions to Nevarez at the change of plea hearing did not contain complex legal jargon, and Nevarez

responded appropriately to the district court's inquiries, including questions requiring an

explanation beyond merely 'yes' or 'no' answers."  (State's Lodging D-4, p. 5.)

On post-conviction review, Petitioner declared that the statements of the judge and

attorneys during the criminal proceedings did not make sense to Petitioner.  He also

declared that the interpreter only made it worse, and that the interpreter seemed confused.

(State's Lodging D-4, p. 5.)  He points to one example from the record.  Petitioner had

used a sworn court interpreter, Mary Moberly, throughout the proceedings.  The Mexican

consulate also provided him with a personal interpreter, Gina Vellasetin.  At the hearing

on the motion to withdraw his guilty plea, Petitioner explained to the court that he did not

understand what his attorneys meant when they said he had "made a confession."  Then

the following discourse occurred:

| | |
|---|---|
| The Interpreter: | May this Interpreter please take over? |
| The Court: | No, I can't have her do that.  I'd like to, but I have to go with a Court sworn Interpreter.  He can assist you with questions if you want. |
| The Interpreter: | I'm asking what confession he's talking about. |
| The Court: | Okay.  And if he wants to clarify that with the two of them, that's fine.  Just a minute.  Only one at a time. |

(*Id.*, p. 3; State's Lodging C-1, p. 74 (Tr. 34:4-14).)

The Court notes that this discussion took place *after* Petitioner had already pled

guilty.  Petitioner points to no instance where he was confused before or at the time he

pled guilty, and the record from the change of plea hearing reflects no confusion.

MEMORANDUM DECISION AND ORDER  11

On this record, the Idaho Court of Appeals concluded:

> Nevarez has not produced any evidence that Moberly's interpretation was actually defective.  His assertion that Moberly asked if Vellasetin could take over because Moberly was unable to interpret the proceedings properly is entirely speculative.

(*Id.*, at p. 4.)

In its review of the record, this Court noted that the state district court particularly advised Petitioner of his opportunity to ask questions and use the interpreter at the change of plea hearing:

> The Court:    Mr. Nevarez, if at any time you do not understand what the Court says, will you please advise me so that we can have the Interpreter assist you?  Is that agreeable?
>
> Defendant:    Yeah.

(State's Lodging C-1, p. 70 (Tr. 19:19-23).)

Statements of counsel at the change of plea hearing clearly indicated what the terms of the agreement was and that no other agreements had been made.  (*Id.*)  The Court then asked Petitioner if he had understood what his attorney had said, and Petitioner indicated that he had understood.  (*Id.*)  The Idaho Court of Appeals concluded: "Because Nevarez has not provided more than a scintilla of evidence that Moberly inadequately interpreted the proceedings or that he did not understand them, we affirm the dismissal of his claim that counsel unreasonably failed to preserve the issue for appeal and his assertion that poor interpretation rendered his plea unknowing, involuntary, and unintelligent."  (*Id.*, p. 5.)

MEMORANDUM DECISION AND ORDER  12

Upon its own review of the state court record, including the transcript of the change of plea hearing (State's Lodging C-1, pp. 64-77), the Court concludes that the Idaho Court of Appeals' decision was not based on a unreasonable determination of the facts.  Nor has Petitioner shown that the decision was contrary to, or involved an unreasonable application of, United States Supreme Court precedent.  Petitioner's allegation that the sworn court interpreter was inadequate is based on mere speculation.  Petitioner had a history of thirty years of residency in the United States and an admitted proficiency in conversational English.  No one questioned the competence of the interpreter during the criminal proceedings.  The vague incident that Petitioner points to shows nothing more than a misunderstanding that the Court immediately directed Petitioner and his interpreters to clear up.  Importantly, Petitioner has provided no specific allegations about how the interpreter's interpretation fell short regarding recitation of the plea agreement terms in open court.

Based upon the entirety of the record, the Court concludes that Petitioner is not entitled to habeas corpus relief on his first claim under § 2254(d)(1) or (2).  As a result, this claim is subject to dismissal with prejudice.

### 3.    Second Claim: Merits Analysis

Petitioner's second claim is that his Fifth, Sixth, and Fourteenth Amendment rights were violated because the prosecutor breached the plea agreement by not adhering to its earliest offer of (1)  recommending an indeterminate life sentence with ten years fixed, and (2) dismissing charges against Petitioner's wife.  Due process requires that "when a plea

MEMORANDUM DECISION AND ORDER  13

rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971).

The Idaho Court of Appeals applied the *Santobello* standard to the facts of Petitioner's case and determined that "the record here shows that the State did not breach the plea agreement,' and that the elements of Petitioner's claim were "conclusively disproven by the record in the underlying criminal proceedings." (State's Lodging D-4, p. 5.) The Idaho Court of Appeals relied on the facts set forth above, particularly, that at the time Petitioner pled guilty, there was no indication on the record that the original plea agreement terms offered early in the negotiation were part of the final agreement. (*Id.*, p. 6.) At the change of plea hearing, the prosecutor stated: "At sentencing, both sides can ask for what they want at sentencing," and Petitioner's counsel reiterated: "The recommendation would be concurrent on those two charges and no agreement on sentencing and I don't believe there are any other agreements." (*Id.*, p. 6.) In the face of these clear statements that there were no agreements on sentencing recommendations and no other agreements, Petitioner pled guilty.

After reviewing the state court record, this Court concludes that Petitioner has failed to show that the Idaho Court of Appeals' opinion is contrary to *Santobello*, or an unreasonable application of *Santobello* to the facts of the case, nor has he shown that the state courts made an unreasonable determination of the facts in light of the evidence presented. The Idaho Court of Appeals determined that Petitioner rejected the original

MEMORANDUM DECISION AND ORDER  14

plea offer and instructed his attorney to "get a better deal."  (State's Lodging D-4, p. 6.)
There is no evidence showing that the originally-offered terms were a part of the final
agreement, and no evidence showing that Petitioner had any reason to continue to believe
that the original terms were contained in the final agreement after the final agreement was
plainly dictated in open court.

In addition, a review of the record shows that at the end of the change of plea
hearing, when the court asked counsel if they had anything further, counsel mentioned,
"Not concerning this, we just have Amilia, who is still kind of hanging out in the air and
we need to figure out what we're doing with her."  (*Id*., p. 73 (Tr. 30:10-14).) After that,
the Court again asked, "Is there anything further from anyone?"  (*Id*., p. 73 (Tr. 31:8).)
Again, Petitioner did not take the opportunity to state his understanding that the charges
against his wife should be dismissed.

The Court agrees with the Idaho Court of Appeals that no breach is evident from
the record.  Relief is not warranted under § 2254(d)(1) or (2).

4.    Third Claim

Petitioner's third claim is that his Sixth Amendment right to effective assistance of
counsel was violated by his trial counsel's representations that Petitioner was guaranteed a
sentence of only three years fixed with twelve years determinate, and that the prosecution
would dismiss the charges against Petitioner's wife.

In *McMann v. Richardson*, 397 U.S. 759 (1970), the Court held that where a
defendant is represented by counsel during the plea process and enters his plea upon the

MEMORANDUM DECISION AND ORDER  15

advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *Id*. at 771.  In *Tollett v. Henderson*, 411 U.S. 258 (1973), the Court held that a defendant who pleads guilty upon the advice of counsel "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*." *Id*., 411 U.S. at 267.

Ineffective assistance of counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984).  Under the *Strickland* standard, a petitioner must show both that counsel's performance was deficient, and that the deficient performance prejudiced the petitioner.  *Id.* at 687.  To establish deficient performance, a petitioner must demonstrate that his counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688.  To establish prejudice, a petitioner must demonstrate "a reasonable probability that, but for [his] counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  In *Hill v. Lockhart*, 474 U.S. 52, 59 (1985), the Court held that a claim that a plea is not knowing and voluntary due to counsel's ineffective advice requires a showing of a reasonable probability that the defendant would not have pled guilty but for counsel's erroneous advice, but would have proceeded to trial.

On review of Petitioner's post-conviction case, the Idaho Court of Appeals rejected Petitioner's arguments as inconsistent with the record:

> As noted above, at the change of plea hearing, counsel explained the terms of the plea agreement, and made no mention of the terms now claims by Nevarez. Nevarez made no objection of counsel's characterization of the

MEMORANDUM DECISION AND ORDER  16

> plea agreement, and indeed, indicated that this was his understanding. Furthermore, the district court explained the mandatory minimum sentence . . . [and] Nevarez said he understood.

(State's Lodging D-4, p. 8.)

The Idaho Court of Appeals also rejected Petitioner's argument that counsel had misled Petitioner into believing that he would not be subject to the mandatory minimum sentence. The court pointed to a statement from Petitioner's counsel to the court at the time Petitioner attempted to withdraw his plea, where counsel explained that he told Petitioner he was going to research a legal theory that might avoid the mandatory minimum sentence. (State's Lodging C-1, p. 74, Tr. 35:6-25 & 36:1-25.) The Idaho Court of Appeals determined, "This conversation suggests not that counsel misled Nevarez, but merely that he had indicated the possibility that research might uncover a legal argument that would allow him to avoid the mandatory minimum sentence." (State's Lodging D-4, p. 9.)

On the record before it, the Court of Appeals concluded that Petitioner failed to show prejudice under *Strickland* because, even if counsel had misled Petitioner about obtaining a lesser sentence, any such "erroneous advice was cured by the trial court's clear statements that the mandatory minimum sentence for trafficking would apply." (*Id.*) Similarly, the Court concluded that it was clear from the discussion of the final plea agreement at the change-of-plea hearing that the earlier-offered terms regarding Petitioner's wife were not included in the final agreement. (*Id.*, pp. 6 & 9.)

MEMORANDUM DECISION AND ORDER  17

Having reviewed the Idaho Court of Appeals' opinion in light of the state court record, the Court concludes that Petitioner has failed to show that the opinion is contrary to, or an unreasonable application of, *Strickland* to the facts of the case, nor has he shown that the state courts made an unreasonable determination of the facts in light of the evidence presented.  Even if Petitioner labored under a misunderstanding of the terms of the plea agreement when he walked into the change of plea hearing, he was encouraged to ask questions if he did not understand and to speak up if he needed help from the interpreter.  Nothing the Court or the attorneys said at the hearing would have supported his continuing belief that the original terms still applied.  In particular, the charges against his wife were described as still "hanging out in the air," and it was stated that the attorneys needed to "figure out what we're doing with her," at the end of the change of plea hearing, but Petitioner again raised no question, even though these statements contradicted his understanding of the plea agreement.  (*Id.*, p. 73 (Tr. 30:10-14).)  As a result of the foregoing, the Court concludes that Petitioner is not entitled to relief under § 2254(d)(1) or (2), and the third claim shall be dismissed with prejudice.

5.    <u>Fourth Claim</u>

Petitioner's fourth claim is that his Sixth Amendment right to effective assistance of counsel was violated because his trial counsel had a conflict of interest at the hearing on Petitioner's motion to withdraw his plea where Petitioner was alleging that "the reasons for withdrawing the plea were each due to counsel's failings." (Petition, p. 9, Docket No.

1.)  Petitioner further alleges that the conflict "prevented counsel from vigorously pursuing his client's interests."  (*Id.*)

Where a defendant did not raise an objection at trial, in order to later establish a violation of the Sixth Amendment he must demonstrate that an actual conflict of interest adversely affected his lawyer's performance.  *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). Where a petitioner has proven that a real conflict of interest existed and adversely affected the adequacy of the representation, he need not demonstrate prejudice to obtain relief.  *Id.* at 349-50; *see Strickland*, 466 U.S. at 692 (an alleged conflict of interest that adversely affected a lawyer's performance is entitled to a limited presumption of prejudice).

Here, Petitioner did not raise a conflict of interest at the time of the hearing on the motion to withdraw the guilty plea.  On appeal of this issue, Petitioner argued that his counsel made a "rather lame" argument in support of Petitioner's motion to withdraw his guilty plea as a result of his counsel having a conflict of interest.  (State's Lodging D-1, p. 17.)  The Idaho Court of Appeals determined:

> [W]e have held above that Nevarez had no meritorious ground for withdrawal of the plea, either due to breach of the plea agreement or due to counsel's alleged misrepresentation of the terms of the agreement, and Nevarez has not shown that there existed any stronger argument that could have been presented in support of his motion.  In short, Nevarez has not shown that the alleged conflict of interest had an adverse effect on his lawyer's performance.

(State's Lodging D-4, p. 10.)

Reviewing the state court record, this Court agrees with the Idaho Court of Appeals that Petitioner has failed to show how his motion to withdraw the guilty plea was

MEMORANDUM DECISION AND ORDER  19

adversely affected by counsel's conflict of interest.  Counsel openly discussed with the Court what he believed caused Petitioner's confusion–the conversation they had about whether there was a way around the mandatory minimum sentencing statute.  The state district court reviewed the transcripts of the change of plea hearing and found no confusion in what was said in open court.  (State's Lodging C-1, pp. 74-76, Tr: 32:1 through 40:10.)  The Idaho Court of Appeals found no confusion in the change of plea hearing transcripts, and this Court finds none.  As a result, the Court concludes that the Idaho Court of Appeals is not contrary to *Cuyler*, nor is it an unreasonable application of, *Cuyler* to the facts of the case.  In addition, Petitioner has not shown that the state courts made an unreasonable determination of the facts in light of the evidence presented.  As a result, the fourth claim is subject to dismissal with prejudice for failure to meet the standards set forth in § 2254(d)(1) or (d)(2).

6.     Fifth Claim

Petitioner's fifth claim is that his Sixth Amendment right to effective assistance of counsel was violated because his trial counsel failed to preserve for appeal the issue of the court interpreter's sufficiency.  As set forth above, the Idaho Court of Appeals determined that Petitioner failed to provide sufficient factual allegations to show that the interpretation was inadequate or harmful to his defense.  This Court is in agreement.  As a result, Petitioner has not shown deficient performance of his counsel or prejudice to his case.  The fifth claim is subject to denial on the merits because it does not satisfy the requirements of § 2254(d)(1) or (2).

MEMORANDUM DECISION AND ORDER  20

In conclusion, Respondent's Motion for Summary Judgment shall be granted, and Petitioner's entire case shall be dismissed with prejudice.

## REVIEW OF THE CLAIMS AND THE COURT'S DECISION
## FOR PURPOSES OF CERTIFICATE OF APPEALABILITY

In the event Petitioner files a timely notice of appeal from this Court's judgment, and in the interest of conserving time and resources, the Court now evaluates the claims within the Petition for suitability for issuance of a certificate of appealability (COA), which is required before a habeas corpus appeal can proceed.  28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).  A COA will issue only when a petitioner has made "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). The Supreme Court has explained that, under this standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.*"  Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal citation and punctuation omitted).

When a court has dismissed the petition or claim on the merits, the petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.* at 484.   The COA standard "requires an overview of the claims in the habeas petition and a general assessment of their merits," but a court need not determine that the petitioner would prevail on appeal.  *Miller-El*, 537 U.S. at 336*.*

Here, the Court has denied the Petition on the merits.  The Court finds that additional briefing on the COA is not necessary.  Having reviewed the record and decision again, the Court concludes that reasonable jurists would not find debatable the Court's decision on the merits of the claims raised in the Petition and that the issues presented are not adequate to deserve encouragement to proceed further.  As a result, the Court declines to grant a COA on any issue or claim in this action.  Petitioner may file a notice of appeal and request a COA from the Ninth Circuit Court of Appeals, if he desires, pursuant to Federal Rule of Appellate Procedure 22(b).

**ORDER**

NOW THEREFORE IT IS HEREBY ORDERED that Respondent's Motion for Summary Judgment (Docket No. 7) is GRANTED, and this action is DISMISSED with prejudice.

IT IS FURTHER HEREBY ORDERED that the Court will not grant a Certificate of Appealability in this case.  If Petitioner chooses to file a notice appeal, the Clerk of Court is ordered to forward a copy of this Order, the record in this case, and Petitioner's notice of appeal, to the United States Court of Appeals for the Ninth Circuit.

DATED:  **August 27, 2009**

Honorable B. Lynn Winmill
Chief U. S. District Judge

MEMORANDUM DECISION AND ORDER  22